IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD F. RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 10 C 7580 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| BURGETT, INC., BURGETT BROTHERS, INC., | ) | |
| AMERICA SEJUNG CORPORATION, and | ) | |
| WELKIN SOUND, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Edward F. Richards' amended complaint alleges claims against defendants Burgett, Inc. ("Burgett"), Burgett Brothers, Inc. ("Burgett Brothers"), America Sejung Corporation ("ASC"), and Welkin Sound, Inc. ("Welkin"). Before the Court are the parties' cross-motions for summary judgment, and plaintiff's motion to strike. For the reasons stated below, defendants' motions for summary judgment are granted, and plaintiff's motion to strike and motion for summary judgment are denied.

*I.     Factual Background*

As an initial matter, the Court notes that all the parties submitted replies in support of their statements of material facts. The local rules do not provide for such replies, and accordingly the Court disregards them. *See Miller v. Ameritech Corp.*, No. 02 C 2286, 2005 WL 2266614, *1 n.2 (N.D. Ill. Sept. 14, 2005).

In addition, plaintiff has moved to strike paragraph 47 of ASC's and Welkin's statement of material facts on the basis that the paragraph improperly references offers of compromise, which are inadmissible under Federal Rule of Evidence 408. The Court did not consider this

paragraph in ruling on the parties' motions for summary judgment. The motion to strike is denied as moot.

Unless otherwise noted, the following facts are undisputed. In October 2000, defendant Burgett offered to sell its rights in its GEORGE STECK trademarks (collectively, the "STECK marks"), used in connection with pianos, to plaintiff. Plaintiff and Burgett's negotiations regarding the marks continued through 2001 and into 2002. In 2001, plaintiff gave Burgett a check for $33,500 as a first installment payment prior to an agreement, and Burgett cashed the check.

Meanwhile, plaintiff and Burgett also had been negotiating an agreement under which plaintiff would buy Burgett's SOHMER trademark. However, in early 2001 plaintiff ended negotiations for the SOHMER mark and filed his own Intent to Use the SOHMER mark with the U.S. Patent and Trademark Office.

In a sworn declaration later filed in litigation between plaintiff and Burgett relating to the SOHMER mark,[1] plaintiff stated that his negotiations with Burgett regarding the STECK marks "broke down entirely when, in early 2002, Burgett demanded that [he] abandon [his] trademark application for the SOHMER mark as a condition for Burgett to complete the sale of the GEORGE STECK mark to [him]." On February 15, 2002, a Burgett executive assistant sent an e-mail to plaintiff that stated that Burgett's president, Gary Burgett:

> has received the Agreements for his signature and called to ask me to check our files and make sure we had received your retraction of the Sohmer Trademark Application. I don't see anything in our files documenting your willingness to do so. If you could forward to me a brief letter confirming that you are doing so, I

---

[1] That case, *Persis Int'l, Inc., et al. v. Burgett, Inc.*, 09 C 7451, was filed on November 30, 2009, and was assigned to Judge Ronald A. Guzman.

>will let Gary know we have it and get the Agreements signed and back to you for your signature.

On February 19, 2002, Gary Burgett, while on vacation in Hawaii, signed the sales agreement and assignment documents for the STECK marks, and had the assignment documents notarized. On February 21, 2002 or shortly thereafter, Burgett executive Tom Lagomarsino told plaintiff that if plaintiff did not withdraw his SOHMER trademark application, Burgett would not send him the STECK assignments.

Plaintiff did not withdraw his application for the SOHMER mark. Burgett did not send the STECK assignment documents to plaintiff, and plaintiff never signed the STECK sales agreement. Burgett destroyed the original documents in 2002. Burgett never returned the $33,500 to plaintiff, and plaintiff did not make any additional payments to Burgett for the STECK marks. Plaintiff later stated in a April 27, 2010 sworn declaration in the SOHMER litigation that when he refused to abandon his application for the SOHMER mark in 2002, his negotiations with Burgett relating to the STECK marks "ceased, without any agreement ever having been executed."

In 2002 or 2003, Burgett licensed use of the STECK marks to defendant ASC. ASC began advertising and selling pianos bearing the STECK marks in the United States in 2003. Defendant Welkin also has distributed pianos bearing the STECK marks.

Years passed. In September 2010, during discovery in the SOHMER litigation, plaintiff received copies of the STECK assignment documents that Gary Burnett had signed in Hawaii in 2002. According to plaintiff, upon seeing these documents for the first time in 2010, he realized that unbeknownst to him the assignment of the STECK marks to him had in fact been completed eight years earlier. On November 24, 2010, plaintiff recorded the STECK assignment

3

documents with the U.S. Patent and Trademark Office, and filed this action.

Plaintiff's amended complaint in this case alleges various claims based on his contention that he holds the rights to the STECK marks: trademark infringement, unfair competition, and deceptive trade practices under the Lanham Act and state law against all defendants (Counts I through VI). In the alternative, in the event that his claims in Counts I through VI fail, plaintiff asserts claims of unjust enrichment and promissory estoppel against Burgett and Burgett Brothers, relating to Burgett's retention of the $33,500 plaintiff paid it in 2001 (Counts VII and VIII). Burgett asserts counterclaims for declaratory relief against plaintiff, seeking a declaratory judgment that it did not assign trademark rights in the STECK marks to plaintiff. The parties have filed cross-motions for summary judgment.

## II. Analysis

### A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Validity of Assignment

At the center of the parties' dispute is the question of whether the assignment of the STECK marks from Burgett to plaintiff was completed and valid. Defendants argue that they are entitled to summary judgment on plaintiff's trademark infringement and unfair competition claims because the assignment was never completed, and therefore plaintiff has no rights in the marks that he can assert. Plaintiff argues that he is entitled to summary judgment because the assignment was completed in 2002, although he did not learn of it until 2010.

Burgett and Burgett Brothers state, and the other parties do not dispute, that Illinois law governs the issue of the validity of the assignment; therefore, this Court will apply Illinois law. The Court looks to general contract law in analyzing the validity of an assignment. *See N.W. Diversified, Inc. v. Desai*, 818 N.E.2d 753, 761 (Ill. App. Ct. 2004). "The existence of an assignment is 'determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances.'" *Stilwell v. Am. Gen. Life Ins. Co.*, 555 F.3d 572, 577 (7th Cir. 2009) (quoting *N.W. Diversified, Inc.*, 818 N.E.2d at 761). "It is necessary that the assignor manifests an intent to transfer his rights under the contract to the assignee." *See id.* (quoting *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1069 (Ill. App. Ct. 1995)).

Plaintiff relies on three facts to support his contention that Burgett assigned its rights in the STECK marks to him: (1) Gary Burgett signed the assignment documents and had them notarized in 2002; (2) Burgett accepted and retained plaintiff's $33,500 first installment payment; and (3) plaintiff recorded the assignment documents with the U.S. Patent and Trademark Office in 2010. The Court finds that these events do not establish that Burgett intended to transfer its rights in the STECK marks to plaintiff.

5

To the contrary, the undisputed evidence in this case establishes that Burgett did not assign the STECK marks to plaintiff. First, the assignment documents were exhibits to, and part of, the sales agreement, and cannot be considered in isolation from that agreement. The sales agreement provided that it "is effective as of the date it has been signed by the parties," and it is undisputed that plaintiff never signed the sales agreement. Moreover, the original documents were destroyed in 2002, and these documents were not delivered to plaintiff until copies were produced to him in discovery in 2010. The mere fact that these documents were signed internally at Burgett in contemplation that the transaction would be completed in the future is not evidence that the deal was in fact done. In addition, it is undisputed that Burgett had conditioned the sale of the STECK marks on plaintiff's withdrawal of his application for the SOHMER mark, and that plaintiff did not fulfill this condition. While Burgett retained plaintiff's first installment payment, it is also true that plaintiff never made the remaining payments for the marks. Further evidence that Burgett did not intend to complete the assignment is the undisputed fact that plaintiff himself understood for years that no agreement had been reached.

Finally, it is true that the Lanham Act provides that recording a trademark assignment is *prima facie* evidence of the execution of the assignment. *See* 15 U.S.C. § 1060(a)(3). However, "[p]rima facie evidence of execution is not the same as conclusive evidence of the validity of an assignment." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 68 (2d Cir. 2010). The act of recording an assignment document is a ministerial act not subject to scrutiny by the Patent and Trademark Office as to the substance of the transaction. *Id*. "Since the act of recording a document is not a determination of the document's validity, the existence of a recorded assignment does not preclude a party from . . . establishing its ownership of the

6

mark in a proper forum, *such as a federal court*." *See id.* (internal citations and quotation marks omitted; emphasis in original). Here, Burgett has established that it did not assign the STECK marks to plaintiff, and plaintiff cannot manufacture validity by recording the assignment documents.

The Court concludes that Burgett did not assign the STECK marks to plaintiff. Since plaintiff had no rights in those trademarks, his infringement, unfair competition, and deceptive trade practices claims in Counts I through VI fail.

### C. *Unjust Enrichment and Promissory Estoppel*

As alternative claims to his trademark infringement and unfair competition claims, plaintiff asserts claims of unjust enrichment and promissory estoppel against Burgett and Burgett Brothers, for retaining the $33,500 plaintiff paid Burgett in 2001. Defendants argue that these claims, filed on November 24, 2010, are time-barred under Illinois's five-year statute of limitations. *See* 735 ILCS 5/13-205; *Frederickson v. Blumenthal*, 648 N.E.2d 1060, 1063 (Ill. App. Ct. 1995). Under the Illinois discovery rule, the statute of limitations begins to run when "the injured party knows or should have known of his injury." *See City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*, 32 F.3d 277, 282 (7th Cir. 1994) (quoting *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 979 (Ill. 1981)); *see also Lewandowski v. Jelenski*, 929 N.E.2d 114, 119 (Ill. App. Ct. 2010) (discovery rule applies to unjust enrichment claims). Defendants argue that plaintiff's unjust enrichment and promissory estoppel claims accrued in February 2002, when plaintiff admits he became aware that Burgett was retaining his money without giving plaintiff the benefit of the STECK assignment. Accordingly, defendants argue, plaintiff's claims, filed more than eight years later, were untimely.

7

Plaintiff contends that a ten-year statute of limitations for breach of written contract applies here. As defendants correctly note, however, plaintiff asserts his claims for promissory estoppel and unjust enrichment as alternate claims to his trademark infringement claims, in the event that no contract applies. This is consistent with the principle of Illinois law that these doctrines do not apply where a contract exists between the parties. *See Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005). The Court agrees that the statute of limitations applicable to a breach of written contract does not apply here.

Plaintiff argues that even a five-year statute of limitations should not bar his claims in this case because Burgett admitted that it owed the money to plaintiff. In support of this argument, plaintiff points to Burgett executive Tom Lagomarsino's deposition testimony in this case relating to discussions he had with plaintiff in 2002, in which Lagomarsino offered to issue a refund of the money in cash or barter. Plaintiff also cites Lagomarsino's January 22, 2002 e-mail to plaintiff stating: "I would like to talk to you about a refund or barter for the deposit that you have made on the G. Steck trademark."

Illinois courts recognize that a new promise to pay a past-due debt made after the expiration of the statute of limitations can remove the prior bar of the statute of limitations. *See, e.g., Axia Inc. v. I.C. Harbour Constr. Co.*, 501 N.E.2d 1339, 1344 (Ill. App. Ct. 1986). Such a revival of an old debt "can be accomplished only by an explicit agreement," however. *Id*. Here, Lagomarsino's testimony regarding the 2002 events does not constitute an explicit new promise to repay the money. Nor does Lagomarsino's 2002 e-mailed request to discuss a possible refund or barter with plaintiff amount to an explicit new promise to repay the money. In any event, to the extent that Lagomarsino's 2002 discussions constituted such a promise, the promise was

made before the original statute of limitations expired, and was not made within five years before plaintiff filed this case.

Next, plaintiff argues that the statute of limitations was equitably tolled because Burgett "actively misled [plaintiff] into believing that it had not assigned the GEORGE STECK Marks to [plaintiff] and had instead cashed his check with no benefit." Plaintiff also states that he took reasonable efforts to recover some of the payment, by pursuing his rights in the SOHMER mark in the U.S. Patent and Trademark Office beginning in 2004, and by initially asserting an unjust enrichment claim relating to the $33,500 payment for the STECK marks in the SOHMER litigation in 2009.[2]

The Illinois Supreme Court has stated that "[e]quitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000). As the Seventh Circuit has observed, this position appears to conflate the doctrines of equitable tolling and equitable estoppel. *See Hollander v. Brown*, 457 F.3d 688, 694 n.3 (7th Cir. 2006) ("Illinois cases appear, at times, to use 'equitable estoppel' interchangeably with the related principle of equitable tolling"); *see also Fidelity Nat'l Title Ins. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006) (stating that "[t]he Illinois cases that mention the term [equitable tolling] seem to mean by it equitable estoppel"). Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps

---

[2] Plaintiff voluntarily dismissed that claim from the SOHMER case shortly after he filed this case.

9

to prevent him from suing." *Hollander*, 457 F.3d at 694 n.3. Here, it appears that plaintiff is actually invoking the doctrine of equitable estoppel, which is "a distinct doctrine governing cases in which the defendant misleads the plaintiff into thinking that he doesn't have to sue yet, or in some other way prevents him from suing within the statutory period." *Fidelity Nat'l Title Ins. of N.Y.*, 436 F.3d at 839.

An essential element of equitable estoppel is that plaintiff must have reasonably relied on the defendants' misconduct to his detriment, and suffered prejudice as a result. *See Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000). That is, the plaintiff must show that the defendants' misleading conduct played a substantial role in causing the claim to become time-barred. *See Vaughn v. Speaker*, 533 N.E.2d 885, 891-92 (Ill. 1988). According to plaintiff, until 2010 he was misled into believing that Burgett had kept his money even though the deal for the STECK marks had fallen through. Plaintiff has not shown that defendants' misleading conduct played any role in causing plaintiff to delay filing his promissory estoppel and unjust enrichment claims until after the statute of limitations expired. Indeed, plaintiff actually would have a stronger reason to seek the return of the money during the period when he contends he was misled into believing that the transaction had not been completed and that Burgett had cashed his check with no benefit to him. Moreover, to the extent that plaintiff intends to invoke equitable tolling, his argument would still fail, because he has not shown that despite due diligence he was unable to file his promissory estoppel and unjust enrichment claims earlier.

Finally, plaintiff argues that the limitations period has not run because Burgett's refusal to refund plaintiff's $33,500 is linked to Burgett's trademark infringement, which plaintiff contends is a continuing violation. The "continuing violation" rule provides that "where a tort

involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). "A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Id.*

Contrary to plaintiff's argument, the alleged trademark infringement is not connected to Burgett's retention of the $33,500. As discussed above, plaintiff brought his promissory estoppel and unjust enrichment claims relating to the money as alternate claims to his trademark infringement claims, in the event that it is determined that the sale of the STECK marks was not completed. Any unlawful retention of the $33,500 occurred in 2002, when the STECK transaction fell through, and is not a continuing act. Because plaintiff filed his promissory estoppel and unjust enrichment claims more than five years later, they are time-barred.[3]

**D.     Burgett's Declaratory Judgment Counterclaims Against Plaintiff**

In its counterclaims, Burgett seeks a declaratory judgment that plaintiff has no rights in the STECK trademarks, and an order directing plaintiff to remove the three assignments he recorded on November 24, 2010 from the U.S. Patent and Trademark Office. For the same reasons discussed above, Burgett's motion for summary judgment as to its counterclaims is granted, and plaintiff's motion for summary judgment as to these counterclaims is denied.

**ORDERED:** Plaintiff's motion to strike paragraph no. 47 of ASC and Welkin's statement of material facts [100] is denied as moot. Defendants ASC and Welkin's motion for

---

[3] The Court also notes that plaintiff has offered no evidence that defendant Burgett Brothers played any role in the events that are the subject of this case. Accordingly, even if the assignment of the STECK marks to plaintiff had been completed, or the statute of limitations did not bar plaintiff's promissory estoppel and unjust enrichment claims, plaintiff's claims against Burgett Brothers would nevertheless fail.

summary judgment [78] is granted. Defendants Burgett and Burgett Brothers' motion for summary judgment [83] is granted. Plaintiff's motion for summary judgment [84] is denied. Judgment is entered in favor of defendants America Sejung Corporation, Welkin Sound, Inc., Burgett, Inc., and Burgett Brothers, Inc., and against plaintiff Edward F. Richards. Plaintiff is ordered to remove the three recorded assignments of the GEORGE STECK trademarks, recorded November 24, 2010, from the U.S. Patent and Trademark Office. Judgment in favor of defendants and against plaintiff will be set forth on a separate document and entered in the civil docket. *See* Fed. R. Civ. P. 58(a); 79.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED:     December 12, 2011